## Richmond

HALLIE FOSTER, ET AL. v. BOARD OF SUPERVISORS OF HALIFAX COUNTY, ET AL.

November 30, 1964.

Record No. 5805.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

*John W. Carter* (*Lindsey L. Moore; Carter & Carter*, on brief), for the appellants.

*Frank M. Slayton and Robert T. Vaughan* (*Easley, Vaughan & Slayton*, on brief), for the appellees.

SNEAD, J., delivered the opinion of the court.

Hallie Foster, Anna Foster, and Mary Foster, complainants, appealed from a final decree entered July 5, 1963 in the Circuit Court of Halifax County denying their prayer to enjoin Floyd J. Lea, Frank B. Barker, and the Board of Supervisors of Halifax County, defendants, from condemning a roadway across complainants' land.

Sometime prior to May 7, 1962, Floyd J. Lea (also spelled Lee) and Frank B. Barker petitioned the Board of Supervisors of Halifax County to establish a private outlet across the land of complainants. On May 7, 1962, the board appointed five viewers pursuant to Code, § 33-142 to go upon complainants' land and report "upon the expediency of establishing or altering the location of such private outlet". It directed that all costs "incident to this action" be paid by petitioners. (§ 33-153) Four of the viewers went upon the land and reported to the board that there was a necessity for establishing a road "In Mt. Carmel District beginning on Rt. 693 and going SW through the land of Hallie Foster, Anna Foster and Mary Foster a distance of about 1200 feet." The viewers further reported that the sum of $300 would be just compensation to complainants for the "40 feet wide right of way" through their land, and that "said road will be one of such mere private convenience as to make it proper that it should be opened, established or altered and kept in order by the * * * persons for whose convenience it is desired." (Lea and Barker)

On October 1, 1962, the board confirmed the viewers' report, and on October 17, 1962, complainants filed a bill of complaint praying that defendants be permanently enjoined from taking their land. The trial court heard evidence in the cause *ore tenus* on April 20, 1963 and thereafter entered a decree which provided in part: "the injunction sought by the complainants is hereby denied and the report of the viewers filed herein granting the defendants a right of way across the lands of the complainants is hereby confirmed and approved in every particular except that the right of way granted the defendants is hereby established at 30 feet." It is from this decree that we granted complainants an appeal.

Complainants' farm fronts upon the western side of State Route No. 693 in Halifax county. Defendants Lea and Barker own farms that adjoin complainants' land. The Lea tract adjoins it on the south, and the Barker property adjoins it on the west. The Barker farm also adjoins the Lea farm on the west. Complainants own a dirt road about twelve feet wide and twelve hundred feet long which runs across their land from Route 693 to the Lea farm. It traverses the Lea farm and comes to a dead end upon the land of Barker. Lea, Barker, and their predecessors in title have used the road for fifty years or more. It is not disputed that they have a private easement to use this road. At the time of trial, Lea and Barker each had a tenant living on their property.

Over the years, complainants have always permitted Lea and Barker to use the road, but objected to their attempt to widen it. It was sometime after complainants interposed their objection that Lea and Barker petitioned the board of supervisors to institute condemnation proceedings, which resulted in condemning the dirt road to a width of forty feet.

Complainants made four assignments of error to the actions of the lower court, but we are of opinion that there is only one fundamental issue that needs to be discussed. This issue is quite narrow, and it presents the following question for our determination: whether or not Code, §§ 33-141 *et seq.* permit a county board of supervisors to condemn the land of one property owner and establish a private road for the benefit of adjacent property owners. Aside from any constitutional question involved we hold that the question must be answered in the negative.

The board of supervisors proceeded to condemn complainants' land pursuant to the provisions of Code, § 33-142. That section provides in part: "Whenever the board of supervisors or other governing body of any county shall be of opinion that it is necessary to establish or alter the location of a *public road*, * * * it may appoint five viewers, who shall be resident freeholders of the county, any three of whom may act, to examine such roads or routes and report upon the expediency of establishing or altering the location of such *public road*, * * *." (Italics supplied.) It authorizes a board of supervisors to take private property for the purpose of establishing a "public road". Defendants concede that the board lacks authority to take private property for a private use.

In *Fallsburg, &c. Co.* v. *Alexander*, 101 Va. 98, 101, 43 S. E. 194, we stated:

"Neither in our Constitution, nor in the constitutions of other States of the Union, is there any express provision forbidding the Legislature to pass laws whereby the private property of one citizen may be taken and transferred to another for his private use. As has been well said by Green, J., in *Varner* v. *Martin*, 21 West. Va. [534, at page] 548: 'It was doubtless regarded as unnecessary to insert such a provision in the Constitution or bill of rights, as the exercise of such an arbitrary power of transferring by legislation the property of one person to another, without his consent, was contrary to the fundamental principles of every republican government; and in a republican government neither the legislative, executive, nor judicial de-

partment can possess unlimited power.' In that case it is further said that there is an entire concurrence of all the authorities in the proposition, that private property cannot be taken for private use, either with or without compensation." See *Boyd* v. *Ritter L. Co.*, 119 Va. 348, 351, 357, 370, 89 S. E. 273; *Heninger* v. *Peery*, 102 Va. 896, 899, 47 S. E. 1013; 6 M. J., Eminent Domain, § 16, p. 701.

The record before us clearly indicates on its face that defendants were condemning complainants' land for a private use. The May 7 resolution of the board of supervisors stated that it was predicated "Upon the application of F. B. Barker and F. J. Lee, incident to a proposed *private outlet* from the property of the said F. B. Barker and F. J. Lee in Mt. Carmel District of Halifax County, Virginia." (Italics supplied.) The heading of the resolution provided in part: "Petition of F. B. Barker and F. J. Lee—*Private Outlet* in Mt. Carmel District." (Italics supplied.) Thus, it is readily apparent that the condemnation proceeding was begun in contravention of Code, § 33-142.

The proceeding not only contravened the express terms of Code, § 33-142 at its inception, but it also disregarded the statute at the time the viewers were appointed. The May 7 resolution designated five viewers "incident to a proposed *private outlet*" and ordered them to "view the proposed *private outlet* in question and report to this Board upon the expedience of establishing or altering the location of such *private outlet.* * * * " The words "public road" do not appear anywhere in the resolution, yet the words "private outlet" appear five times.

The report of the viewers stated that the road would "Provide outlet for F. B. Barker, F. J. Lee and two other families." Defendants contend that a road may be public even though it leads only from a public highway to the dwelling or farm of a single person and serves only a few individuals. *Lewis* v. *Washington*, 5 Gratt. (46 Va.) 265, 269. Defendants' contention is sound, but the road must be in fact a public road and not a private one.

In 17 M. J., Streets and Highways, § 2, p. 448, it is said:

"Whether a road sought to be established is a public highway or one merely for the benefit of private individuals is not tested by the fact that such individuals receive a greater benefit than the public generally. The test is not simply how many actually use the road, but how many have a free and unrestricted right in common to use it. If it is free and common to all the citizens, it is a public road." See *Heninger* v. *Peery, supra,* 102 Va. at p. 899.

The report of the viewers was made pursuant to the order of the board of supervisors. Since the order directed them to consider a "proposed private outlet", it must be assumed that they did not consider the establishment of a public road that would be open to every one. The report dealt with the creation of such outlet for the convenience of Lea, Barker, and their two tenants.

When the court entered its decree on July 5 it did not use the words "public road". It merely confirmed and approved the report of the viewers "in every particular except that the right of way granted the defendants is hereby established at 30 feet." The decree had the effect of granting a private right of way across the land of complainants.

The language used in the condemnation proceeding shows that complainants' property was being taken for a private use. The board may not have intended that the condemned land would be used only for private purposes, but if it had been its intention to establish a public road pursuant to Code, § 33-142 it could easily have so stated in the resolution of May 7.

We hold that Code, §§ 33-141 *et seq.* did not give the board of supervisors the authority to condemn complainants' land for the purpose of establishing a private road. The decree of July 5 is reversed and remanded with directions to the lower court that it enter an order restraining defendants from taking any part of the land of complainants pursuant to the May 7 resolution of the board of supervisors and the report of the viewers pursuant thereto.

*Reversed and remanded.*