HARMAN MINING
CORPORATION, Plaintiff,

v.

OFFICE OF SURFACE MINING REC-
LAMATION AND ENFORCEMENT,
et al, Defendants.

HARMAN MINING
CORPORATION, Plaintiff,

v.

Donald P. HODEL, Secretary of the
Interior et al, Defendants.

Civ. A. Nos. 85–0322–A, 86–0197–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

May 5, 1987.

Joseph W. Bowman, Grundy, Va., John A. MacLeod, Thomas C. Means, Washington, D.C., for plaintiff.

Charles Gault, Bruce T. Hill, Dept. of Interior, Knoxville, Tenn., for defendants.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This decision addresses two separate actions (Civil Action Nos. 85–0322–A and 86–0197–A) in which the plaintiff, Harman Mining Corporation (Harman) seeks review of the decision of an administrative law judge denying plaintiff's request for temporary relief from the Notice of Violations (NOV) issued by the Office of Surface Mining Reclamation and Enforcement (OSMRE or OSM); requests that this court declare OSM's actions unlawful; and asks this court to enjoin defendants, OSMRE, from

enforcing the respective NOVs. This court has jurisdiction under 30 U.S.C. § 1276 and 28 U.S.C. § 1331. The court finds it necessary to relate the specific facts of each action.

## CIVIL ACTION NO. 85–0322–A

On March 21, 1985, OSM conducted an oversight inspection at the Krest Mine (formerly L & L Coal No. 9 mine) which the plaintiff owns but operates through a contract miner. On March 25, 1985, OSM issued a Ten-Day Notice No. X–85–13–288–08 to the Virginia Division of Mined Land Reclamation (DMLR) alleging a violation of V771.11, the Virginia state program regulation prohibiting surface coal mining and reclamation operations without a valid permit. OSM claimed that Harman had failed to permit a haulage road called Little Prater Road. The Ten-Day Notice serves as a notification to the state and permittee that a violation exists and gives them an opportunity to take enforcement action. If the state fails within ten (10) days after this notification to take appropriate action to correct the violation or show good cause for such failure, OSM is required to reinspect, and if the violation continues, OSM may issue a NOV or cessation order. DMLR previously had determined that Little Prater Road was a public road under the Virginia State Program and did not require Harman to permit it; therefore, in response to the Ten-Day Notice DMLR noted that it had previously determined that Little Prater Road was a public road and took no further enforcement action with respect to the Ten-Day Notice.

On July 1, 1985, OSM issued NOV 85–13–288–009 alleging that Harman was in violation of the Virginia State Program for failure to permit Little Prater Road and requiring Harman either to obtain a permit or face a cessation order and substantial civil penalties. Harman contested the NOV by filing an application for review on July 26, 1985 and a request for temporary relief on August 2, 1985. On September 26, 1985 Administrative Law Judge Joseph E. McGuire conducted a hearing and orally denied Harman's request for temporary relief. Pursuant to 30 U.S.C. § 1276(a) the plaintiff commenced this action on October 3, 1985 and on October 11, 1985 the ALJ officially confirmed his oral order denying plaintiff's request for temporary relief; the basis of ALJ McGuire's denial being that Harman was not likely to prevail on the merits. This court, however, granted the plaintiff's request for temporary relief on October 28, 1985.

Specifically, the parties presented the following evidence as to whether Little Prater Road is a public road. It is 1.95 miles in length and connects State Route 604 and State Route 617 in Buchanan County, Virginia. The road provides sole access to two active mines other than Harman's Krest mine and the only access to a cemetery. In addition, the road provides access for the 12–15 private homes located along the stretch at issue. However, the road appears on no official highway map but is shown on a USGS quad map which designates it as a jeep trail. The road is maintained with public funds, however, the parties are in sharp dispute as to the amount expended. The defendant claims that the county provided, from the coal haulroad fund, $1,125 in gravel to maintain the road in 1981, $1,065 in 1983, and $1,125 in 1985. Additionally, defendant contends that the county did not maintain the road, but only provided the gravel to Harman who worked the road. Harman however, contends that the county has contracted for a bridge, paving, ditching and graveling in the amount of $135,000. In addition, the landowners formally deeded a right-of-way for the road to the county in 1952 and when two county officials (Gary Rose, a member of the Buchanan County Board of Supervisors, and Joe Bland, Buchanan County Administrator) were questioned if Little Prater Road was a public county road, both answered "Yes, sir." Transcript of Proceedings Before the Department of Interior pp. 57 and 85. Lastly, an OSM employee testified that during his brief inspection, he saw little public use of the road; however, plaintiff found in an informal survey that 44 coal haul trucks and 93 passenger vehicles used the road during a ten-hour period.

CIVIL ACTION NO. 86–0197–A

On December 7, 1983, OSM conducted an inspection at Deel Fork Refuse Area, which Harman operates in Buchanan County, Virginia. As a result, OSM issued a Ten-Day Notice No. X–84–13–73–1 to DMLR on January 30, 1984 alleging a violation of V771.-11. OSM claimed that Harman had failed to permit a haulage road called Deel Fork Road. Previously DMLR had determined that Deel Fork Road was a public road under the Virginia State Program which Harman was not required to permit, therefore, DMLR took no further enforcement action with respect to the Ten-Day Notice.

On January 6, 1985, OSM issued NOV 85–13–289–1 alleging that Harman was in violation of the Virginia State Program for failure to permit Deel Fork Road and requiring Harman either to obtain a permit or face a cessation order and substantial civil penalties. To contest the NOV, Harman filed an application for review on February 4, 1985 and a motion for temporary relief on February 7, 1985. On March 26, 1985 Administrative Law Judge Joseph E. McGuire conducted a hearing and received evidence. On July 8, 1986, Judge McGuire denied Harman's temporary relief request and its challenge to the validity of NOV 85–13–289–1. Harman appealed the ALJ's denial of its application for review to the Interior Board of Land Appeals, which appeal is still pending. Pursuant to 30 U.S.C. § 1276(a), Harman commenced this action on August 5, 1986 to appeal the denial of temporary relief. This court granted the plaintiff's request for temporary relief on August 7, 1986.

The parties presented the following evidence at the March 26, 1985 hearing with regard to whether Deel Fork Road is a public road. The disputed section of Deel Fork Road begins at the end of State Route 664 and continues for one-half mile to the upper end of the refuse area. Eight residences use the cited section for access to their homes and two active coal mines use the cited section to reach their mines. Harman deeded its easement rights in the road to the county in 1978. Paul Elswick, a member of the Buchanan County Board of Supervisors, testified that the road has existed for 20 years and is considered a public road, maintained by public funds. Local resident, John Clevinger, who has lived on Deel Fork Road all his life, testified that the road was constructed and maintained in the same manner as the remaining public roads in Buchanan County. County records indicate that Buchanan County spent $100 from its general fund for maintenance between 1982 and 1985; that the county spent $5,000 in Federal Disaster Funds on the entire length of the road (3 miles) in 1984; and that the county spent $3,000 from Coal Severance tax since 1978. Joseph Bland, Buchanan County Administrator, filed an affidavit with plaintiff's November 8 motion to supplement the record, which stated that the county paid $31,-459.17 to have .26 mile of the cited section paved in October, 1985. Lastly, Joseph W. Bland testified that the county lost 90 percent of its records concerning roads in Buchanan County as a result of the 1977 flood.

## OPINION

■ The issue before this court is whether this court should temporarily enjoin OSM from enforcing the NOVs at the Deel Fork Refuse Area and the Krest mine. The Surface Mining Act specifically authorizes district courts to review the decision of an ALJ and to grant temporary relief from the NOV. See 30 U.S.C. § 1276(a)(2), (c). The Fourth Circuit has clearly set forth the standard by which the district court shall enjoin the Secretary:

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant environmental harm to land, air, or water resources.

*Virginia Surface Mining and Reclamation Association v. Andrus*, 604 F.2d 312, 315 (4th Cir.1979). Indeed, the Fourth Circuit's criteria is the same criteria which Congress adopted in 30 U.S.C. § 1276(c). It is important to note, however, that a district court in reviewing a request for temporary relief applies a different standard of review than a district court which reviews an ALJ's decision on the merits. In reviewing a decision of an ALJ on the merits or any other related order or decision, a district court must affirm if the findings are "supported by substantial evidence on the record considered as a whole." § 1276(b). An exception to this rule arises when a district court considers a request for temporary relief pending final determination. In this instance § 1276(c) directs the court to conduct its own examination of the criteria in § 1276(c) to determine if temporary relief is proper. *See* § 1276(c)(1), (2), and (3). Accordingly, temporary relief is proper if Harman proves the criteria in § 1276(c). The fact that Harman has conclusively proved criteria 1 and 3 is undisputed. Therefore, this court's ability to issue a preliminary injunction turns upon the satisfaction of criterion 2.

Criterion 2 requires that the party requesting the injunction show that there is a substantial likelihood that he will prevail on the merits. Thus the central issue becomes whether Harman is substantially likely to prevail on the issue that it does not have to permit Deel Fork Road and Little Prater Road. Previously, the standard used to determine when an operator had to permit a road was whether it was a public road for purposes of the Federal Surface Mine and Control Reclamation Act of 1977. 30 C.F.R. § 701.5 (1984)[1] contained the criteria to examine in reaching the decision as to whether the road was public. In addition, the Commonwealth of Virginia in its quest to obtain primacy implemented a coal haulroad policy to use when determining whether or not a public road would be subject to the permitting requirements of the Federal Surface Mining Control and Reclamation Act. However, Virginia's criteria was identical to 30 C.F.R. § 701.5's criteria defining affected area.

Therefore, it appears logical that this court should apply the criteria contained in Virginia's coal haulroad policy to determine if Harman must permit the roads in issue, however, in *In Re: Permanent Surface Mining Regulation Litigation*, 620 F.Supp. 1519 (D.D.C.1985) (slip opinion), Judge Thomas Flannery remanded the federal regulation (30 C.F.R. § 701.5) to the Secretary as inconsistent with 30 U.S.C. § 1291(28). This action left no federal regulations in effect concerning determination of public road and this situation will continue until the Secretary promulgates new regulations. The Secretary has not yet promulgated new regulations and OSM suspended the remanded regulation on November 20, 1986. *See* 51 Fed.Reg. 41952.

Under the Act, only the District Court of the District of Columbia has jurisdiction to hear a claim that a regulation is invalid. In essence, the challenge of the validity of a regulation promulgated in conjunction with the Act may only be heard in the District of Columbia District Court. 30 U.S.C. § 1276(a)(1). Therefore, this court must follow Judge Flannery's decision remanding the regulation and finding it invalid. However, Judge Flannery's decision and rationale provide little guidance in this instance in which this court must interpret § 1291(28)(B). Judge Flannery's decision did not interpret § 1291(28)(B) but merely analyzed 30 C.F.R. § 701.5 as being consistent or inconsistent with § 1291(28)(B).

■ The issue then arises as to what effect the suspended and remanded regulation has on the identical DMLR criteria. Judge Flannery's action in remanding the

---

1. The definition reads, in pertinent part:
The affected area shall include every road used for purposes of access to, or for hauling coal to or from, surface coal mining and reclamation operations, unless the road (a) was designated as a public road pursuant to the laws of the jurisdiction in which it is located; (b) is maintained with public funds, and constructed, in a manner similar to other public roads of the same classification within the jurisdiction; and (c) there is substantial (more than incidental) public use.

federal regulation also invalidates the Virginia regulation, used to determine if a road is a public road, because it was identical to the invalid federal regulation. *In Re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514, 519 (D.C.Cir.), cert. denied, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981) states clearly that state regulations must be consistent with the Secretary's. Since the federal regulation was inconsistent and invalid, Virginia's identical regulation is also invalid. To hold otherwise would allow Virginia's regulation to be inconsistent with the Act.

This conclusion leaves the court with no precedent as to what standard to apply in determining whether Harman is required to permit Deel Fork Road and Little Prater Road. Because there are no valid current federal or state regulations, this court must look to the Act itself. 30 U.S.C. § 1291(28)(B) provides in pertinent part:

'surface coal mining operations' means —[ ] the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include any adjacent land the use of which is incidental to any such activities, *all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage* .... (emphasis added).

Therefore, this court must interpret § 1291(28)(B) to develop criteria to use in determining if Harman must permit Deel Fork Road and Little Prater Road.

30 U.S.C. § 1291(28)(B) includes within the definition of "surface coal mining operations" "all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage...." Whether a road falls within the definition of "surface coal mining operations" is important because it determines whether the operator must permit the road. Unlike the remanded regulations, § 1291(28)(B) contains no exclusions for public roads or otherwise. Therefore, a literal reading and interpretation of § 1291(28)(B) requires an operator to include within the definition of

"surface coal mining operations" *any and every* road used to gain access to the mine or for haulage.

As there are no exceptions in § 1291(28)(B), a literal reading requires that an operator permit an interstate if used for coal haulage. In fact, in many major coal producing counties there would be no roads that are not required to be permitted, not by one but by many operators. This interpretation obviously was not Congress' intent in enacting § 1291(28)(B). A court is not required to adhere to a literal reading of a statute if such a reading would undermine the expressed intent of Congress. *Bob Jones University v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983); *Trans Alaska Pipeline Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978); *Food Town Stores, Inc. v. E.E.O.C.*, 708 F.2d 920, 929 (4th Cir.) cert. denied, *Food Lion, Inc. v. E.E.O.C.*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1983).

Therefore, this court must go beyond the literal reading of the statute. Implicit in Congress' thinking in enacting 30 U.S.C. § 1291(28) was that generally an operator is not required to permit a public road. Both parties agree that public roads are excluded from being permitted, however, the conflict arises in trying to define and determine whether these particular roads are public roads. Obviously, Congress did not anticipate that operators would have to permit interstate highways or four-lane state routes, nor that they would have to permit every road used to haul coal, whether four-lane or two-lane, state or county, paved or unpaved, or even public or private. The roads in question involve joint use by coal operators and non-coal operators, but the statute does not draw any distinction in defining affected area where there is joint use. Furthermore, the statute lends no guidance in defining affected area when a private road is used jointly for coal and noncoal related use. Even where joint use of a private road by two coal companies exists, the statute was unclear as to which company or companies had to permit the road. The Secretary did not

eliminate this confusion until promulgation of the permanent regulations in July, 1982. *See* 30 C.F.R. § 700.11(b).

These cases require this court to define what roads Congress intended to include in 30 U.S.C. § 1291(28). However, the law is so vague that no one knows what the current law is. The regulations were the only indications of the scope of the Act and Judge Flannery held the regulations inconsistent with the Act on July 15, 1985. Therefore, the regulations lend no guidance and Judge Flannery's opinion interpreted the regulations in light of 30 U.S.C. § 1291(28) but did not actually interpret the statute. In addition, the Secretary presumably does not know the extent of applicability of 30 U.S.C. § 1291(28) as the Secretary has not promulgated any new regulations concerning this matter since Judge Flannery remanded the previous regulations twenty (20) months ago.

■ Therefore, this court simply examines the evidence in the record to determine if the roads in question are public roads. OSM presented no evidence at the hearings that the roads are not public other than the statement of one OSM employee who testified that he saw "little public use" during his brief inspections. On the other hand, Harman presented substantial evidence that the roads are public. Specifically, Harman presented testimony of local residents and county officials, all of whom stated that the roads are public. In addition, Harman presented evidence of expenditures which Buchanan County made to maintain the roads. While these amounts are not substantial, the expenditures (made from public funds) provide strong evidence of the public nature of the roads. Lastly Harman presented evidence of the county's substantial expenditures to improve the roads; even stronger evidence of the road's public nature. This evidence, in conjunction with the fact that several private individuals use the roads for access to and from their homes and the fact that other coal mine operations use the roads for access and coal haulage, is more than sufficient to establish that the roads are public and, therefore, that Harman is not required to permit them.

More importantly, Virginia law indicates that the roads are public.

> The test [as to whether a road is public] is not simply how many do actually use [the road], but how many may have a free and unrestricted right in common to use them. If it is free and common to all citizens, then no matter whether it is or is not of great length, or whether it leads to or from a city, village or hamlet, or whether it is much or little used, it is a public road. (Citations omitted).

*Heninger v. Peery*, 102 Va. 896, 899, 47 S.E. 1013, 1014 (1904); *See Foster v. Board of Supervisors of Halifax County*, 205 Va. 686, 689, 139 S.E.2d 65, 68 (1964) and *Stewart v. Fugate*, 212 Va. 689, 690, 187 S.E.2d 156, 157 (1972). This method of defining public as opposed to private roads is not exclusively Virginia's approach. *See also Sumner County v. Interurban Transp. Corp.*, 213 S.W. 412, 141 Tenn. 493 (1919); *Bradford v. Mosley*, Tex.Com.App., 223 S.W. 171, 173 (1920); *Phillips v. Stockton*, Tex.Civ.App., 270 S.W.2d 266, 270 (1954). The record indicates that there are no restrictions on who may use the roads in question. The roads are open to use by all citizens for any legal purposes. Therefore, the roads are public under Virginia law. As such this court finds that Harman has succeeded in proving that it is likely to prevail on the merits, and this court accordingly grants Harman's motion for a temporary injunction.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

## ORDER

In accordance with a Memorandum Opinion entered this date, this court hereby GRANTS plaintiff's motion for temporary relief and enjoins the Office of Surface Mining from enforcing NOVs 85–13–288–009 and 85–13–289–1 pending completion of its administrative appeal. The court further ORDERS these cases stricken from the docket.

The Clerk is directed to send certified copies of this Order to counsel of record.