**UNITED STATES of America, Plaintiff,**

v.

**LAMBERT COAL COMPANY, Defendant.**

**Civ. A. No. 82–0350–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 23, 1986.

David McNabb, Knoxville, Tenn., for plaintiff.

William Rogers McCall, Bristol, Va., for defendant.

## MEMORANDUM OPINION

### GLEN M. WILLIAMS, District Judge.

Pursuant to 30 U.S.C. § 1232(e) the plaintiff, the United States of America, filed this action against the defendants on December 30, 1982 in an effort to collect delinquent Abandoned Mined Land Reclamation (AML) fees for the period April, 1980 until July, 1982. The defendants consist of A.J. Lambert, Greg Lambert, Mary Lambert and Fran Dotson individually and Lambert Coal Company (Lambert), a partnership operating surface coal mining and reclamation operations within the Commonwealth of Virginia. The suit attempts to recover AML fees for four (4) Lambert coal mine operations. Operations one and two are deep mines operated by Lambert and identified as Lambert #14 (MSHA I.D. #44–01656) and Lambert #44 (MSHA I.D. #44–05210). Operation three is a limited, auger (surface) mining operation that in the first quarter of 1981 Lambert contracted with Little K Coal Company (MSHA I.D. #44–05347) to undertake. Operation four involves a contract mining agreement between an affiliate of Lambert, L & D Coal and Land Corporation, and Resa Coal Company (MSHA I.D. #44–05756) during the last quarter of 1981 and the first two quarters of 1982. Defendants acknowledge liability for the reclamation fees for all of these operations if the operations themselves are found otherwise liable in this lawsuit. The Resa and Little K operations have been dismissed as they only affect a small part of the lawsuit.

Initially, Lambert made AML fee payments for mine #14 and mine #44. During the fourth quarter of 1977 Lambert began making AML fee payments for mine #14 and during the first quarter of 1979 began making payments for mine #44. Lambert continued to make these payments until May 1980 at which time Lambert had paid $33,114.61 in AML fees. On May 1, 1980 Lambert ceased making AML fee payments believing that it was exempt from 30 U.S.C. § 1232 by virtue of the two-acre exemption but resumed making payments on June 17, 1983 for mine #14 and on October 20, 1983 for mine #44.

This lawsuit presents the question of whether Lambert was exempt from making AML fee payments for the period April, 1980 to July, 1982 because its operations (at both mine #14 and mine #44) affected less than two acres. Both parties concede that under the current regulations both mine #14 and mine #44 affect more than two acres. This classification occurs because of 30 C.F.R. § 700.11(b).[1] Even

---

1. 30 C.F.R. § 700.11(b) provides in pertinent part:

(b) This chapter does not apply to the extraction of coal for commercial purposes where the surface coal mining and reclamation operation,* *together with any related operations,* has or will have an affected area of two acres or less. For purposes of this paragraph:

\* \* \* \* \* \*

(2) Except as provided in paragraph (b)(3) of this section, surface coal mining operations shall be deemed related if they occur within twelve months of each other, are physically related, and are under common ownership or control.

(i) Operations shall be deemed physically related if drainage from both operations flows into the same water-shed at or before a point within five aerial miles of either operation.

(ii) Operations shall be deemed under common ownership or control if they are owned or controlled, directly or indirectly, by or on behalf of:

(A) The same person;

(B) Two or more persons, one of whom controls, is under common control with, or is controlled by the other;

(C) Members of the same family and their relatives, unless it is established that there is no direct or indirect business relationship between or among them.

(emphasis added).

though both mine # 44 and mine # 14 contain less than two acres, they are not exempt under 30 C.F.R. § 700.11(b) because their affected area is greater than two acres. Mine # 14 is related to mine # 43 and mine # 44 is related to mine # 42. Mines # 14 and # 43 are 200 feet apart and the access road to mine # 43 goes through # 14. Mines # 44 and # 42 are 400 feet apart, use the same refuse pile and use the same haulroad. After adding the areas in mines # 14 and # 43 and mines # 44 and # 42 together, because they are related, the area is greater than two acres and neither mine comes under the two-acre exemption of 30 C.F.R. § 700.11(b).

Notwithstanding the fact that defendants concede that under the current regulations, effective September, 1982, they are no longer eligible for the § 700.11(b) two-acre exemption, the defendants contend that they were under the two-acre exemption prior to September, 1982 when the current regulations became effective. (Permanent Regulatory Program: Two-Acre Exemption, 47 Fed.Reg. 33,424 1982 (codified at 30 C.F.R. § 700. et seq.)) (hereinafter 1982 Regulations). Defendants' argument is premised upon the belief that the 1982 regulations retroactively changed settled law. Defendants argue that Permanent Regulatory Program, 44 Fed.Reg. 15,-315 (1979)[2] (hereinafter 1979 Regulations) was never effective in Virginia because of primacy and, therefore, that in September 1982 when the 1982 Regulations became effective they superceded the regulations that were in effect, Initial Regulatory Program 42 Fed.Reg. 62,677 (1977)[3] (hereinafter 1977 Regulations), which contained no mention of "related sites." The parties

have stipulated to certain facts; and this court heard oral testimony on November 7 and 10, 1986. Both parties have filed post-trial briefs. This court has jurisdiction by virtue of 30 U.S.C. § 1232(e) and 28 U.S.C. § 1345.

## OPINION

Once again this court is presented with the question of retroactive application of the current 1982 Regulations. *See United States v. Shelton Coal Corp.*, 647 F.Supp. 264 (W.D.Va.1986) (prohibiting retroactive application of 30 C.F.R. § 700.11(b)(1), which provides that the area of a haul road used by more than one surface coal mining operation be included in the affected area of each operation); *United States v. E & C Coal Co.*, 647 F.Supp. 268 (W.D.Va.1986) (prohibiting retroactive application of 30 C.F.R. § 701.5, which provides that the shadow area shall be included in computation of affected area.) Both decisions not to apply retroactively the 1982 Regulations rested upon retroactive change of settled law rather than retroactive settling of unsettled law. For example, *E & C* involved 30 C.F.R. § 701.5, which required that an operation include the area located above underground workings when computing the affected area. Because neither the 1977 nor 1979 Regulations had mentioned shadow area for inclusion in computing affected areas, the 1982 Regulation involved a change of settled law that if applied retroactively would work an injustice on the coal company.

Lambert urges this court to apply the same rationale in this case and hold that the 1982 Regulations cannot be applied

**2.** 44 Fed.Reg. 50, § 700.11 provides in pertinent part:

This chapter applies to all coal exploration and surface coal mining and reclamation operations, except—

\* \* \* \* \* \*

(b) The extraction of coal for commercial purposes where the surface coal mining and reclamation operates two acres or less, but not any such operation conducted by a person who affects or intends to affect more than two acres at *physically related sites,* or any such operation conducted by a person who

affects or intends to affect more than two acres at physically unrelated sites within one year.

**3.** 42 Fed.Reg. 239, § 700.11 provides in pertinent part:

The regulations in this chapter apply to all surface coal mining and reclamation operations except—

\* \* \* \* \* \*

(b) The extraction of coal for commercial purposes where the surface mining and reclamation operation affects two acres or less;

retroactively, that Lambert's operations at mines # 14 and # 44 are less than two acres and, therefore, that it is not liable for ALM fees for the period in question. Lambert's theory, however, is more novel than that in *Shelton* and *E & C.* Unlike the situation in *Shelton* and *E & C,* which involved the 1982 Regulations that were more inclusive than the 1979 Regulations, the 1982 Regulations concerning "closely related" are more liberal than the 1979 Regulations.[4] An argument claiming retroactive change of settled law concerning "closely related" would appear to fail because both the 1982 and 1979 Regulations contain language referring to related sites and the 1982 Regulations are more advantageous to Lambert than the 1979 Regulations. The 1982 Regulations narrowed the scope of the 1979 Regulations rather than expanded the scope. Therefore, Lambert first claims that the 1982 Regulations changed or superceded the 1977 Regulations rather than the 1979 Regulations. The 1977 Regulations contained no mention of physically related sites and, therefore, Lambert would have a greater likelihood of succeeding on its theory of retroactive change of settled law.

In support of its opinion, Lambert claims that the 1979 Regulations were never in effect in Virginia because of primacy; therefore, this court must address the issue of primacy. Lambert contends that the 1979 Regulations were never in effect in Virginia because Virginia obtained primacy in December, 1981 and that until Virginia obtained primacy, coal mine operations were regulated under the initial or "interim" program. This court has already addressed the primacy issue in *E & C.* The federal government limited the state's exclusive regulation by specifically providing in 30 U.S.C. § 1232(a) that "all operators" shall be liable for the AML fee. The federal government specifically retained power to regulate reclamation fees. Consequently, the federal regulations also apply to determine which coal mining operations are subject to the provision of 30 U.S.C.

§ 1232. *United States v. E & C Coal Co.,* 647 F.Supp. at 271–72. Therefore, the 1979 Regulations were effective in Virginia; and Virginia's obtaining primacy in 1981 does not prohibit application of the regulations.

Lambert also argues that until December, 1981 when Virginia obtained primacy, coal mine operators were regulated under the interim 1977 Regulations rather than the 1979 Regulations. This argument is also incorrect. 30 C.F.R. § 700.11 is found in Subchapter A of Chapter VII—Office of Surface Mining Reclamation and Enforcement, Department of the Interior. 30 C.F.R. § 700.1 specifically states that:

> The regulations in Chapter VII of 30 C.F.R. consisting of Parts 700–899, establish the procedures through which the Secretary of the Interior will implement the Surface Mining Control and Reclamation Act of 1977 (Pub.L. 95–87, 91 Stat. 445 (30 U.S.C. Section 1201 et seq.)). Chapter VII is divided into 13 subchapters.
>
> (a) Subchapter A [which includes 30 C.F.R. § 700.11] contains introductory information intended to serve as a guide to the rest of the Chapter and to the regulatory requirements and definitions generally applicable to the programs and persons covered by the Act.

Although it might not be readily apparent that Subchapter A applies to all programs, both interim and permanent, after examining 700.1(b) and (c) it becomes readily apparent. 30 C.F.R. § 700.1(b) states that "Subchapter B contains regulations covering the initial regulatory program which apply before the applicability of permanent program regulations...." There is no similar specific limitation placed on the provisions of Subchapter A as there is on the provisions of Subchapter B. Additionally, 30 C.F.R. § 700.1(c) limits coverage of Subchapter C only to "regulations covering applications for and decisions on permanent State programs...." Again no such specific limitation is placed on Subchapter A

---

**4.** The 1979 Regulations did not contain any distance limitations as to what "physically related" meant, whereas the 1982 Regulations limit "physically related" to mines whose drainage flows into the same watershed not more than five (5) miles from the mine sites.

**1474**

provisions. Therefore, Lambert's argument that 30 C.F.R. § 700.11 did not become operative until the federal government granted Virginia primacy is without merit. Obviously, all the provisions of Subchapter A including 30 C.F.R. § 700.11 were operative during both the interim and permanent program. As such 30 C.F.R. § 700.11 has been applicable since September 1, 1979.

Having established which regulations were applicable prior to the 1982 Regulations, this court now addresses Lambert's contention that the 1982 Regulations changed settled law. Lambert contends that the 1982 Regulations cannot be applied retroactively because they effect a change in the settled law as defined by the 1979 Regulations. Lambert's contention is misplaced. The present situation is unlike *E & C* and *Shelton*. The 1979 Regulations concerning "closely related" were in fact broader than the 1982 Regulations; the 1982 Regulations narrow the applicability of the AML fees and make two-acre exemptions more easily obtainable. Under the 1982 Regulations, drainage from the related sites must flow into the same watershed no more than five (5) miles apart whereas the 1979 Regulations placed no distance limitation upon related sites. For this reason, retroactive application of the 1982 Regulations is permissible because the new regulation does not overrule or change the prior regulations. *Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977) *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). The 1982 Regulations settle, clarify and restrict the application of the 1979 Regulations.

This court further notes that Lambert has not attempted to use 30 C.F.R. § 700.11(b)(3)[5] to prove that the mines in question are not related. Lambert offered no

evidence of management, bookkeeping or work force with which to prove the sites were unrelated. Lambert did not attempt to discount or explain the apparent close relationship between the operations. Lambert cannot simply rely on the fact that the sites had different permits or MSHA identification numbers. If the court allowed this type of analysis then the regulations become subject to semantic manipulation. Equally so, the fact that the operations involved different seams does not mean the operations are not physically related. In fact, it was the very intention of Congress that operations involving different seams could be related.

 It is important to note that the defendant attempted to defend this action by urging this court to equate "closely related" with "contiguous." Obviously these terms as used in 30 C.F.R. § 700.11 are not synonymous. Conceiveably, contiguous mines might not be closely related while mines separated by a considerable distance may be closely related. That is not to say, however, that "closely related" is easily defined. The court recognizes and acknowledges that in many instances "closely related" is difficult to define and to apply and that defining "closely related" requires taking an in-depth look into the specific facts of each situation. Aside from common ownership and the proximity of the mines, a court should consider common management, common workforce, common use of machinery, common dumpsites, common drainage, common use of haulage roads and maintenance of separate bookkeeping and records. On the facts that this court has before it, the subject mines are clearly closely related and a refusal to so find renders the regulations meaningless. It is ironic in this case that the

---

5. 30 C.F.R. § 700.11(b)(3) provides:

Notwithstanding the provisions of paragraph (b)(2) of this section, the regulatory authority may determine, in accordance with the procedures applicable to requests for determination of exemption pursuant to paragraph (c) of this section, *that two or more surface coal mining operations shall not be deemed related if, considering the history and circumstances relating to the coal, its location,*

*the operations at the sites in question,* all related operations and all persons mentioned in paragraph (b)(2)(ii) of this section, the regulatory authority concludes in writing that the operations are not of the type which the Act was intended to regulate and that there is no intention on the part of such operations or persons to evade the requirements of the Act or the applicable regulatory program. (emphasis added).

government, which as plaintiff bears the burden of proof, presented little evidence of the relatedness of these mines. The government simply introduced testimony of the proximity of the mines and the common watershed. As previously noted, proximity or contiguousness is not conclusive evidence of relatedness. Nevertheless, the defendant presented compelling evidence, by way of its own witnesses, that the mines were related. The court notes, for future cases and consideration, that a court must closely scrutinize the facts of each case and that the plaintiff bears the burden of proof. Additionally, in a situation that presents a close question, the court must construe the ambiguity against the government and in favor of the mine owner or operator due to the fact that the uncertainty works to prejudice and disadvantage the mine owner or operator.

 This court, therefore, holds that a retroactive application of the 1982 Regulations 30 C.F.R. § 700.11 is permissible to clarify and explain the Regulations as they existed from 1979 to 1982. As such, mines # 14 and # 34 and # 44 and # 42 are and were physically related; and their combined areas determine whether the mines are eligible for the two-acre exemption. Because the combined "physically related" area of mines # 14 and # 44 was and is greater than two acres, mines # 14 and # 44 do not qualify for the 30 C.F.R. § 700.11(b) two-acre exemption; and defendants are liable for AML fees for the period in question. For reasons expressed herein, the court finds it unnecessary to rule upon defendant's recoupment claim.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

### ORDER

In accordance with a Memorandum Opinion entered this date, the court orders the defendant, Lambert Coal Company, to pay the plaintiff, the United States of America, the sum of $132,439.62 for delinquent Abandoned Mined Land Reclamation fees. This amount represents principal of $76,926.95, interest as of July 31, 1986 of $45,613.64, late penalty fee as of July 31, 1986 of $4,230.98 and combined interest and late penalty fee of $5,668.05 for the period August 1, 1986 to date at a rate of $1,188.27 per month. The court further orders the defendant to pay post-judgment interest at a rate of 5.77% from and after this date, computed daily and compounded annually, until paid in full, and the costs of this action.

The defendant's counterclaim is dismissed with prejudice.