**PATRICK COAL
CORPORATION, Plaintiff,**

v.

**OFFICE OF SURFACE MINING REC-
LAMATION AND ENFORCEMENT
et al., Defendants.**

**Civ. A. No. 86–0039–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 22, 1987.

Joseph Bowman, Grundy, Va., James Barry, Bristol, Va., for plaintiff.

Charles Gault, Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Patrick Coal Company (Patrick), seeks review of the decision of an administrative law judge denying plaintiff's request for temporary relief from a Notice of Violation (NOV) and Cessation Order (CO) which the defendant, Office of Surface Mining Reclamation and Enforcement (OSM), issued to the plaintiff. The court has jurisdiction pursuant to 30 U.S.C. § 1276 and 28 U.S.C. § 1331.

## BACKGROUND

From 1979 to June, 1982, Patrick operated an underground mine known as Middle Creek No. 6 at Poplar Gap, in Buchanan County, Virginia. Patrick conducted its mining operations in the Blair Seam of coal. However, at the time Patrick began operations, pre-existing benches and access roads surrounded the Blair Seam. Specifically, the pre-existing areas which Patrick admitted it used in its mining operations were (1) a portion of the pre-existing bench on the Blair Seam level where it located its portals; (2) the area below the Blair Seam which it used for a stockpile and load-out; and (3) two access roads. In addition, other pre-existing disturbed areas included an access road leading from the Blair Seam bench to the Eagle Seam bench (hereinafter Eagle Seam access road) and the Eagle Seam bench. The Eagle Seam is located on the bench above the Blair Seam.

In 1982 Patrick engaged an independent surveyor, John Munsey, to determine the total surface area which the operation encompassed. After including the disturbed area from the Blair bench, the stockpile and load-out area, and the two access roads, Munsey concluded the total surface acreage was 1.7 acres. Relying on Munsey's calculations, on March 16, 1982, Patrick requested that the Virginia Division of Mined Land Reclamation (DMLR) release it from its permit and bond because the mine was less than two (2) acres. On June 9, 1982, DMLR released Patrick's permit and bond after concluding that Patrick was eligible for the Two-Acre Exemption.

On November 25, 1985, OSM inspectors inspected Patrick's Middle Creek Mine No. 6 as part of its two-acre task force. One inspector estimated the affected area to be 2.5 acres and found that Patrick had failed to perform certain reclamation work. In estimating the surface area affected, OSM included not only the area previously included in Munsey's survey, but also included the Eagle Seam access road, leading from the Blair Seam to the Eagle Seam bench, and the Eagle Seam bench itself. Patrick claims that OSM should not have included these additional areas because they were pre-existing. The inspectors, however, found that the Eagle bench contained a diversion ditch which mines use to keep water off the deep mine operating on a lower bench. The inspectors further determined that the access roads and all

three benches were connected together and all part of a workable mine design. Additionally, the inspectors estimated that all the disturbances were approximately the same age.

OSM issued a NOV (No. 85–132–523–006) on November 27, 1985 for the reclamation work Patrick had not completed. OSM, however, did not notify the state as prescribed in 30 U.S.C. § 1271(a). On December 23, 1985, Patrick filed an application for review and a Request for Temporary Relief with the Department of Interior, but before an ALJ considered its requested relief, OSM issued a cessation order (No. 86–132–523–002) on January 6, 1986. On January 15, 1986, Patrick filed a Request for Temporary Relief from the cessation order and on February 4, 1986, filed an Application for Review with regard to the cessation order. On February 3, 1986, Administrative Law Judge Joseph E. McGuire denied Patrick's temporary relief request. Pursuant to 30 U.S.C. § 1276(a), Patrick filed its complaint in the United States District Court for the Western District of Virginia on February 20, 1986 requesting this court to temporarily enjoin OSM from enforcing the cessation order and the NOV.

## OPINION

The issue before the court is whether this court should temporarily enjoin OSM from enforcing the CO and NOV at Patrick's Middle Creek No. 6 Mine. The Surface Mining Act specifically authorizes district courts to review the decision of an ALJ and to grant temporary relief from the NOV and/or CO. *See* 30 U.S.C. § 1276(a)(2), (c). The Fourth Circuit has clearly set forth the standard by which the district court shall enjoin the Secretary:

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant environmental harm to land, air, or water resources.

*Virginia Surface Mining and Reclamation Association v. Andrus,* 604 F.2d 312, 315 (4th Cir.1979). Indeed, the Fourth Circuit's criteria is the same criteria which Congress adopted in 30 U.S.C. § 1276(c). It is important to note, however, that a district court in reviewing a request for temporary relief applies a different standard of review than a district court which reviews an ALJ's decision on the merits. In reviewing a decision of an ALJ on the merits or any other related order or decision, a district court must affirm if the findings are 'supported by substantial evidence on the record considered as a whole.' § 1276(b). An exception to this rule arises when a district court considers a request for temporary relief pending final determination. In this instance § 1276(c) directs the court to conduct its own examination of the criteria in § 1276(c) to determine if temporary relief is proper. *See* § 1276(c)(1), (2), and (3). *Harman Mining Corp. v. Office of Surface Mining,* 659 F.Supp. 806, 809–10 (W.D.Va.1987). Accordingly, temporary relief is proper if Patrick establishes the criteria in § 1276(c). Criteria 1 and 3 are not in dispute. Therefore, this court's ability to issue a permanent injunction turns upon Patrick's showing that it is substantially likely to prevail on the merits.

Patrick claims that it is likely to succeed on the merits for several reasons:

1. That OSM has no jurisdiction over Patrick's mining operations in Virginia because OSM delegated exclusive regulatory authority to Virginia (DMLR).

2. That, even if OSM has jurisdiction over Patrick, OSM exceeded its statutory authority under 30 U.S.C. § 1271(a).

3. That the affected area is less than two (2) acres and, therefore, Patrick is not subject to federal regulation because of the Two-Acre Exemption.

4. That, notwithstanding all of the above, laches and/or estoppel and 30 C.F.R. § 700.11(c) preclude enforcement.

The court considers each of Patrick's claims individually.

## JURISDICTION

■ Patrick's lack of jurisdiction argument appears to be that 30 U.S.C. § 1271 confers jurisdiction upon OSM to issue a NOV and CO only in two instances—when "imminent danger" exists and when OSM precedes the NOV with a public hearing. Because neither occurred in this case, Patrick concludes OSM did not have jurisdiction. However, 30 C.F.R. § 843.12(a)(2)[1] clearly gives OSM the authority to issue a NOV and CO without first holding a public hearing even when no "imminent danger" exists. Patrick suggests that § 843.-12(a)(2) is inconsistent with 30 U.S.C. § 1271 and, therefore, that OSM did not have authority to issue the NOV and CO because § 843.12(a)(2) is invalid. This court, however, does not have jurisdiction to hear Patrick's challenge of the federal regulations; only the District Court for the District of Columbia has jurisdiction to hear a claim that a regulation is invalid. 30 U.S.C. § 1276(a)(1). *Tug Valley Recovery Center v. Watt,* 703 F.2d 796, 800 (4th Cir.1983); *Commonwealth of Virginia v. Watt,* 741 F.2d 37, 40 (4th Cir.1984), *cert. dismissed, Virginia Department of Conservation & Economic Development v. Clark,* 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). As such, Patrick is not likely to prevail on the merits of a final decision with regard to its jurisdiction argument because neither an ALJ nor this court can entertain the argument.

## OSM EXCEEDED ITS STATUTORY AUTHORITY

Patrick argues that, even if OSM has jurisdiction over its mining operations, OSM exceeded its statutory authority under 30 U.S.C. § 1271(a)[2] by failing to give DMLR the ten-day notice. Both 30 U.S.C. § 1271(a) and 30 C.F.R. § 843.12(a) contemplate that the state enforcement agency receive notification of the violation. In addition, 30 C.F.R. § 843.12(a)(2) provides:

Where the State fails within ten days after notification to take appropriate action to cause the violation to be corrected, or to show good cause for such failure, the authorized representative shall reinspect and, if the violation continues

---

1. 30 C.F.R. § 843.12(a)(2) provides:

    (2) When, on the basis of any Federal inspection other than one described in paragraph (a)(1) of this section, an authorized representative of the Secretary determines that there exists a violation of the Act, the State program, or any condition of a permit or exploration approval required by the Act which does not create an imminent danger or harm for which a cessation order must be issued under § 843.11, the authorized representative shall give a written report of the violation to the State and to the permittee so that appropriate enforcement action can be taken by the State. Where the State fails within ten days after notification to take appropriate action to cause the violation to be corrected, or to show good cause for such failure, the authorized representative shall reinspect and, if the violation continues to exist, shall issue a notice of violation or cessation order, as appropriate. No additional notification to the State by the Office is required before the issuance of a notice of violation, if previous notification was given under § 842.11(b)(1)(ii)(B) of this chapter.

2. 30 U.S.C. § 1276(a)(1) provides:

    (a) Notice of violation; Federal inspection; waiver of notification period; cessation order; affirmative obligation on operator; suspension or revocation of permits; contents of notices and orders

    (1) Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirements of this chapter or any permit condition required by this chapter, the Secretary shall notify the State regulatory authority, if one exists, in the State in which such violation exists. If no such State authority exists, or the State regulatory authority fails within ten days after notification to take appropriate action to cause said violation to be corrected or to show good cause for such failure and transmit notification of its action to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring unless the information available to the Secretary is a result of a previous Federal inspection of such surface coal mining operation. The ten-day notification period shall be waived when the person informing the Secretary provides adequate proof that an imminent danger of significant environmental harm exists and that the State has failed to take appropriate action....

to exist, shall issue a notice of violation or cessation order, as appropriate.

OSM admits that it did not issue a ten-day notice to the State of Virginia before issuing the NOV. OSM, however, contends that notice was not necessary in the instant case because Virginia explicitly waived its right to receive notice in an October 21, 1985 letter [3] from Danny Brown (Commissioner, DMLR, Big Stone Gap, Virginia) to Bill Thomas (Director, Big Stone Gap Field Office, OSM).

■ Thus, the question arises as to whether Virginia could waive receipt of the ten-day notice. Patrick claims that Virginia could not waive receipt of the ten-day notice because it indirectly affects its position. However, Congress did not enact the ten-day notice provision for the operator's benefit but rather to allow the state, as primary regulator, the first opportunity to correct the violation. In essence, the ten-day notice is a comity provision. The Surface Mining Control and Reclamation Act of 1977 (SMCRA) does not require the state to take any enforcement action and the state is free to totally disregard the notice if it so desires. It is principally for the benefit of the state. See 44 Fed.Reg. 15305 (March 13, 1979). Therefore, the conclusion logically follows that the state can waive a provision intended solely for its benefit.

In addition, 30 C.F.R. § 843.17 specifically states that "[n]o notice of violation, cessation order ... may be vacated for failure to give the [ten-day] notice to the State regulatory authority [as] required under § 842.11(b)(1)(ii)(B)...." This provision more than adequately demonstrates that the NOV and CO are not void even if improperly issued. Therefore, Patrick has not proved that it is likely to prevail on the merits of a final decision with respect to its claim that OSM exceeded its statutory authority.

### AFFECTED AREA

Patrick contends that the "affected area" of Middle Creek Mine No. 6 is less than two (2) acres, therefore, because it falls within 30 C.F.R. § 700.11(b)'s Two-Acre Exemption, it is not subject to federal or state regulation. As such, Patrick claims OSM's NOV and CO were improper. Patrick asserts two theories in support of its conclusion that the affected area contains less than two (2) acres. First, Patrick challenges the accuracy of OSM's survey. Patrick claims that the differential between its survey and OSM's survey indicates that OSM's survey is inaccurate because the OSM inspector used a less precise method to survey. However, the fact that OSM included the area of the Eagle Seam bench and the Eagle Seam access road, which Patrick clearly did not include, easily explains the differential. Therefore, the proper inquiry is not the accuracy of OSM's survey, but whether OSM properly included all the areas when calculating the affected area. This conclusion leads to Patrick's second theory.

■ Patrick claims that OSM improperly included the additional areas—Eagle Seam bench and Eagle Seam access road—in its calculation of the affected area. Patrick claims that these disturbed areas preexisted the opening of the mine site and, therefore, OSM should not include it in its calculation. Patrick's understanding of what areas OSM includes in its computation of affected area is flawed. The Surface Mining Control and Reclamation Act of 1977 draws no distinction between preexisting and newly created. The determining factor is whether the area is used in

---

3. Danny Brown, in his letter, stated:

We are receiving several Ten-Day Notices resulting from inspections made on completed Chapter 23 permits and areas which were mined and abandoned prior to the less than two (2) acre Consent Order. The Consent Order does not grant DMLR jurisdiction to apply interim or permanent program standards to operations which fall into the category mentioned above. Therefore, in order to eliminate the number of Ten-Day Notices and additional work responding to the notices, we recommend that OSM take whatever action deemed necessary rather than issuing Ten-Day Notices. As you know, this process only creates statistics that we can do nothing about.

I would be happy to discuss this issue with you, and appreciate your cooperation.

conjunction with the present mining operation; but the use need only be incidental. In fact, 30 U.S.C. § 1291(28)(B) specifically states that "surface coal mining operations" mean

> ... the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include *any adjacent land the use of which is incidental to any such activities,* all lands affected by the construction of new roads or the improvement or *use of existing roads* to gain access to the site of such activities and for haulage, ... (emphasis added).

Therefore, the focus becomes whether Patrick uses the areas OSM included within its calculation as part of its total mining plan. OSM inspectors testified at the Department of Interior's hearing that all of the area which OSM included was part of Patrick's total mining plan. Specifically, with respect to the Eagle Seam bench and its access road, OSM inspectors testified that Patrick utilized a diversion ditch on the Eagle bench to prevent water from flowing into the Blair Seam deep mine. In addition, the inspectors testified that all the disturbances were approximately the same age. While OSM may include a pre-existing disturbance in the affected area if its use is incidental to the operation, an area which an operator currently disturbs is even more evidence that the area is part of the operator's total mining plan. Patrick does not challenge the inclusion of the area on any grounds other than that the disturbed area pre-existed Patrick's operations at the Little 6 mine. This evidence, even if substantiated, is not sufficient to overcome OSM's undisputed evidence that the area—whether pre-existing or not—is part of Patrick's total mining plan. Therefore, OSM properly included the area of Eagle bench and its access road when determining the affected area's total acreage.

In addition, the area exceeds two (2) acres because OSM properly included the area from Patrick's related mine sites. 30 C.F.R. § 700.11(b) provides that OSM shall consider all related operations as one operation for the purposes of determining affected area. Section 700.11(b)(2) specifically defines "related," however, Patrick does not contend that the two operations are not related. Rather, Patrick contends that retrospective application of 30 C.F.R. § 700.-11(b), enacted in September 1982, is improper. The thrust of Patrick's argument is the same argument the operator advanced in *United States v. Lambert,* 649 F.Supp. 1470 (W.D.Va.1986); that the 1982 regulation concerning "related" retroactively changed the previously applicable 1979 regulation. This court, however, rejected the challenge in *Lambert* because the 1979 regulation was in fact broader and more inclusive than the 1982 regulation. *Lambert,* 649 F.Supp. at 1474. Relying on *Lambert* 's rationale, this court also rejects Patrick's challenge. As such, the total affected area exceeds two (2) acres.

### ESTOPPEL

Patrick claims that OSM is estopped from issuing the NOV and CO because three and one-half years passed from the time that DMLR determined that Patrick's operations affected less than two acres until the time that OSM issued the NOV and CO. In *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court declined to adopt a blanket prohibition of the defense of estoppel against the United States. The threshold requirements, that a private party must demonstrate when asserting an estoppel defense against the United States, is that it relied on the United States' advice and that it changed its position. In the instant action, Patrick relied on DMLR's decision, not on the United States' advice. In addition, Patrick has not changed its position in reliance of the advice—albeit advice from the DMLR. At most, Patrick maintained the status quo. As such estoppel is not an assertable defense.

### 30 C.F.R. § 700.11(c)

Lastly, Patrick argues that 30 C.F.R. § 700.11(c)[4] prevents OSM from issuing the NOV and CO because it relied on DMLR's earlier determination that it was exempt. Unlike its estoppel argument, Patrick can invoke this protective section even if it relied on the State's regulatory authority. However, the regulation's scope does not extend so far as to prevent OSM from reversing DMLR's earlier decision that the mine's affected area is less than two acres. OSM may reverse DMLR's findings. Its actions in this suit, both at the administrative and judicial levels, are sufficient to reverse DMLR's previous decision; therefore, the NOV and CO are valid, effective and proper. The regulation does, however, prevent OSM from penalizing Patrick for its reliance prior to the time OSM reverses DMLR's decision. Accordingly, the regulation precludes civil penalties prior to reversal, but 30 C.F.R. § 700.11(c) is not sufficient in its scope to prevent OSM from determining that Patrick's affected area is more than two acres and from issuing a NOV and CO. As such, Patrick is not likely to prevail on the merits of a final decision that the NOV and CO were improper.

OSM claims that 30 C.F.R. § 700.11(c) is not applicable in this instance for two reasons. First, OSM asserts that DMLR's release of Patrick's bond on June 9, 1982 predated the implementation of this regulation. However, there is no indication that the Secretary did not intend this regulation to apply retroactively to earlier decisions on which operators were still relying. Moreover, the regulation states that any operator who relies upon a determination shall not be cited. The regulation does not specify that it applies to a state's determination made after implementation of the regulation. Secondly, OSM contends that Patrick did not "accurately present[ ] all the relevant facts." OSM based this reasoning on the fact that DMLR did not perform its own inspection, but relied on Patrick's own survey and investigation. No evidence exists that Patrick withheld any facts and OSM's allegation pertains to DMLR's actions, not Patrick's actions. As such, § 700.11(c) is applicable in this instance.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

### ORDER

In accordance with a Memorandum Opinion entered this date, the court hereby DENIES plaintiff's request for temporary relief. The court further ORDERS the Clerk to strike this case from the active docket of this court.

The Clerk shall forward certified copies of the Memorandum Opinion and Order to counsel of record.

---

4. 30 C.F.R. § 700.11(c) provides:

(c) The regulatory authority may on its own initiative and shall, within a reasonable time of a request from any person who intends to conduct surface coal mining operations, make a written determination whether the operation is exempt under this section. The regulatory authority shall give reasonable notice of the request to interested persons. Prior to the time a determination is made, any person may submit, and the regulatory authority shall consider, any written information relevant to the determination. A person requesting that an operation be declared exempt shall have the burden of establishing the exemption. If a written determination of exemption is reversed through subsequent administrative or judicial action, any person who, in good faith, has made a complete and accurate request for an exemption and relied upon the determination, shall not be cited for violations which occurred prior to the date of the reversal.