HARMAN MINING
CORPORATION, Plaintiff,

v.

Donald P. HODEL, Secretary
Department of the Interior,
Defendant.

Civ. A. No. 86–0198–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

June 3, 1987.

Joseph Bowman, Grundy, Va., John A. MacLeod, Thomas C. Means, Washington, D.C., for plaintiff.

Charles Gault, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Harman Mining Corporation (Harman), seeks review of an administrative law judge's decision denying its request for temporary relief from a Notice of Violation (NOV) which the defendant's enforcement office, the Office of Surface Mining Reclamation and Enforcement (OSM), issued to the plaintiff. This court has jurisdiction pursuant to 30 U.S.C. § 1276 and 28 U.S.C. § 1331.

## BACKGROUND

In 1974, Harman, through Kimberly Coal Company (Kimberly), its contract miner, began mining certain coal reserves which Harman owned in Buchanan County. Kimberly operated the underground mine, which Harman designated Kimberly No. 4 Mine, from 1974 until October 1981. Neither Harman nor Kimberly, however, permitted the mine initially because it was underground.

After the Virginia Division of Mined Land Reclamation (DMLR) acquired jurisdiction over the surface effects of underground mines in 1978, Kimberly applied for a permit. DMLR determined that the mine affected 1.5 acres and issued a state permit.[1] In determining the site's affected area, DMLR did not include the acreage of several access roads (hereinafter referred to as "road") because it considered the roads public. DMLR based this determination on the fact that Harman had deeded its interest in the road to the county and that Buchanan County had accepted it into its road system. DMLR concluded that the definition in the then-current regulation 30 C.F.R. § 710.5[2] excluded the road.

---

1. If the surface effects of the mine had been more than two acres, DMLR would have issued a terms-of-compliance permit pursuant to the Surface Mining Control and Reclamation Act's (SMCRA) interim program performance standards.

2. The interim program regulation, found at 30 C.F.R. § 701.5 provided:

In 1979, Virginia abandoned its dual permit system. Virginia reasoned that if two-acre mines were exempt from the Surface Mining Control and Reclamation Act (SMCRA), they should also be exempt from state regulation. Accordingly, DMLR notified all permit holders, whose affected area was two acres or less, that they could request withdrawal of their permit. Kimberly requested withdrawal of its permit and on August 29, 1979, DMLR determined that the mine was no longer subject to regulation. Kimberly operated under no regulation until it closed in October 1981.

In October 1985, OSM inspected Kimberly's abandoned mine site. On February 5, 1986, OSM issued a Ten-Day Notice to DMLR alleging that Kimberly did not properly reclaim the site in accordance with the federal interim program standards. DMLR conducted a field investigation in response to the Ten-Day Notice and concluded that it had no jurisdiction over the matter because the affected area was less than two acres. OSM reinspected the mine site on March 1 and March 26. OSM then issued a NOV (86–132–423–002) on April 1, 1986 to Harman rather than to Kimberly because Kimberly had gone out of business in 1982.

OSM concluded that the mine was not exempt because it in fact affected more than two acres. OSM based this conclusion on the fact that it did not believe that the road qualified for exemption as a public county road, and that after adding the road's acreage (2.39), the mine's total affected area exceeded two acres. OSM noted that even though Harman deeded its easement rights to Buchanan County on September 1, 1978 pursuant to Va.Code § 33.1–246.1, no party had maintained the road for the previous five years and that the road was now chained to prevent public access.

Harman filed an application for review of and a request for temporary relief from the NOV on April 21, 1986. On June 25, 1986, the Department of the Interior held a hearing in Abingdon, Virginia and in an opinion dated July 24, 1986, ALJ Joseph E. McGuire denied plaintiff's request for temporary relief. Pursuant to 30 U.S.C. § 1276(a), Harman filed its complaint requesting temporary relief on August 5, 1986.

## OPINION

The issue before the court is whether this court should temporarily enjoin OSM from enforcing the NOV against Harman with respect to the Kimberly No. 4 Mine. The SMCRA specifically authorizes district courts to review an ALJ's decision denying temporary relief from a NOV. *See* 30 U.S.C. § 1276(a)(2), (c). The Fourth Circuit has clearly set forth the standard by which the district court shall enjoin the Secretary:

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant environmental harm to land, air, or water resources.

*Virginia Surface Mining and Reclamation Association v. Andrus*, 604 F.2d 312, 315 (4th Cir.1979). Indeed, the Fourth Circuit's criteria is the same criteria which Congress adopted in 30 U.S.C. § 1276(c).

It is important to note, however, that a district court in reviewing a request for temporary relief applies a different standard of review than a district court which

---

*Roads* means access and haul roads constructed, used, reconstructed, improved, or maintained for use in surface coal mining and reclamation operations, including use by coal-hauling vehicles leading to transfer, processing, or storage areas. The term includes any such road used and not graded to approximate original contour within 45 days of con-struction other than temporary roads used for topsoil removal and coal haulage roads within the pit area. Roads maintained with public funds such as all Federal, State, county, or local roads are excluded.

This regulation was effective until April 5, 1983. *See* 48 Fed.Reg. 14821-22 (codified at 30 C.F.R. § 701.5).

reviews an ALJ's decision on the merits. In reviewing a decision of an ALJ on the merits or any other related order or decision, a district court must affirm if the findings are 'supported by substantial evidence on the record considered as a whole.' § 1276(b). An exception to this rule arises when a district court considers a request for temporary relief pending final determination. In this instance § 1276(c) directs the court to conduct its own examination of the criteria in § 1276(c) to determine if temporary relief is proper. *See* § 1276(c)(1), (2), and (3). *Harman Mining Corp. v. Office of Surface Mining*, 659 F.Supp. 806, 810 (W.D. Va.1987). Therefore, this court may grant temporary relief only if Harman satisfies the above criteria. Criterion 1, however, is not in dispute.

■ With respect to criterion 3, the ALJ found that Harman had failed to demonstrate that granting temporary relief would not adversely affect the public health or safety. The unsafe conditions resulted from the unsealed and/or improperly sealed portal entries which the ALJ concluded presented a hazard to "unwary children and hunters." However, the ALJ found that temporary relief would not "cause significant environmental harm to land, air or water resources." This court, however, is not persuaded by the ALJ's reasoning with respect to public health or safety. This court finds that Harman's evidence that this condition has existed for five to six years without incident is more than sufficient to demonstrate that temporary relief will not affect public health or safety. In addition, the relief is only temporary not permanent, and failure to grant the relief disturbs rather than maintains the status quo. The mere fact that an unsafe condition exists does not automatically mean that the public is exposed to it and endangered by it. Therefore, Harman has satisfied criterion 3. Of course, the weight of the ALJ's decision rests upon the finding that Harman is unlikely to succeed on the merits.

Harman, however, claims that it is likely to succeed on the merits for several reasons:

(1) That neither the SMCRA nor OSM's regulations give OSM authority to issue the NOV.

(2) That the interim regulations which OSM seeks to enforce have not been in effect in Virginia since December 15, 1981, therefore, there could be no 1986 violation.

(3) That the affected area was less than two acres, therefore, Kimberly was not subject to state or federal regulation.

(4) That due process precludes enforcing the NOV.

## OSM LACKED AUTHORITY TO ISSUE THE NOV

■ Harman argues that OSM lacked authority to issue the NOV because neither "the Act nor OSM's regulations give it authority to second-guess the state regulatory authority in a primacy state and/or to issue its own direct NOV where the state investigates violations alleged in a ten-day notice and responds that, in its determination, enforcement action is not appropriate." This court most recently addressed this issue in *Patrick Coal Company v. Office of Surface Mining*, 661 F.Supp. 380 (W.D.Va.1987), a similar case in which this court held that 30 C.F.R. § 843.12(a)(2) clearly gives OSM the authority to issue such a NOV. 661 F.Supp. at 383. The court adopts Patrick's reasoning and holds that 30 C.F.R. § 843.12(a)(2) gives OSM the authority to issue the NOV.

## INTERIM REGULATIONS NOT IN EFFECT

■ Harman argues that the interim regulations which OSM now seeks to enforce are not in effect in Virginia. Harman's position is that the interim regulations ceased to be effective in Virginia on December 15, 1981—the date that the Department of the Interior granted Virginia primacy. As such, Harman contends that no violation of the inapplicable regulations could possibly occur in 1986. OSM, on the

other hand, argues that the interim program performance standards remain in effect with respect to this particular mine because it never became subject to state regulation. This court, however, need not decide whether the interim regulations are now effective in Virginia. OSM did not cite Harman for a current violation of an allegedly inapplicable regulation. Rather, OSM cited Harman for a violation that occurred prior to December 15, 1981. It is undisputed that the interim regulations were effective in Virginia at least until Virginia obtained primacy on December 15, 1981. Harman ceased mining operations in October 1981, therefore, any violation occurred while the interim regulations were effective. As such, any attack of the interim regulation must go to the issue of estoppel rather than to the issue that the regulation is now possibly ineffective. Quite obviously, the interim regulations were effective in Virginia when the alleged violation occurred.

### AFFECTED AREA

Harman argues that notwithstanding whether the interim regulations were applicable, it does not come under the regulations because its affected area was less than two (2) acres. *See* 30 C.F.R. § 700.-11(b). Harman relies on 30 C.F.R. § 710.5 (1979), which states, "[r]oads maintained with public funds such as all Federal, State, county, or local roads are excluded." Because Harman deeded its ownership rights (easement) to Buchanan County, it concludes that OSM should exclude the road's area. OSM counters that it should give Permanent Regulatory Program Regulation § 701.5 (48 Fed.Reg. 14821–22, codified at 30 C.F.R. § 701.5) retroactive effect to nullify the interim regulation.

This court, however, need not decide whether OSM can give the Permanent Reg-

ulatory Program Regulation § 701.5 retroactive effect because the United States District Court for the District of Columbia held it inconsistent with 30 U.S.C. § 1291(28) on July 15, 1985. *See In re Permanent Surface Mining Regulation Litigation*, 620 F.Supp. 1519, 1581–82 (D.D.C.1985). Therefore, retroactive application of 30 C.F.R. § 701.5 (1983) (definition of "affected area") is not proper to invalidate 30 C.F.R. § 710.5 (1979) and this court looks to the interim regulation which was effective during Kimberly's operational period: 30 C.F.R. § 710.5 (1979) (definition of "Roads").

Harman claims that OSM should have excluded the haul road from the affected area's total acreage because it deeded its easement rights to Buchanan County in 1978. By deeding its rights, Harman argues that it came under 30 C.F.R. § 710.5's public road exclusion. The fatal flaw in Harman's reasoning is that the Secretary approved Virginia's proposed permanent regulatory program in December 1981, but invalidated Va.Code § 33.1–246.1—the Code section by which Harman claimed 30 C.F.R. § 710.5's exclusion.[3] The Secretary found the Virginia Code section inconsistent with the SMCRA; that finding invalidates the state Code section because state regulations must be consistent with the Secretary's. *In re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514, 519 (D.C.Cir.) *cert. denied*, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981). Therefore, Harman's attempt to come within 710.5's public road exception by way of Va.Code § 33.1–246.1 fails.

■ Harman, therefore, can qualify for the exclusion by showing that Buchanan County maintained the roads with public funds. The record, however, does not include any evidence that Buchanan County maintained the road with public funds. Ev-

---

**3.** The Secretary's conditional approval of Virginia's proposed permanent regulatory program provided:

(i) As discussed in Finding 4(s) of the October 22, 1980 Federal Register notice, the Virginia legislature and several counties have passed statutes and ordinances allowing coal companies to deed their coal haul roads to

counties as 'public roads.' The Secretary finds that Va.Code [§] 33.1–246.1, and those ordinances and [sic] has determined that they would allow the haul road requirements of SMCRA to be circumvented and are inconsistent with SMCRA.

46 Fed.Reg. 61088, 61099 (Dec. 15, 1981).

idently the county performed some ditching and spread some gravel, but these actions appear to have occurred at isolated times rather than at regular intervals. To prove that the county maintained the road, Harman must show more than an isolated expenditure. Particularly, it is important to note that no party has maintained the roads since Kimberly abandoned its mining activities in October 1981. In fact, the road is now chained to prevent any traffic from using the road. No homes or businesses are located along the road whose surface consists entirely of vegetation, as opposed to gravel. This is all evidence that no public authority maintained the road. Because it is apparent that no party maintains the road, this court need not inquire as to whether the maintenance came from public funds. Therefore, Harman is not likely to prevail on the merits that OSM improperly issued the NOV because its affected area was less than two (2) acres.

### DUE PROCESS

█ Harman's due process argument appears to be an estoppel argument. The showing to invoke estoppel against the United States is extremely difficult, but the threshold requirement a party must demonstrate is that it relied on the United States' advice and that it changed its position. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). Harman, however, relied on DMLR's advice, not OSM's. *See Patrick Coal Corp. v. Office of Surface Mining Reclamation and Enforcement*, 661 F.Supp. 380, 385 (W.D.Va.1987). Therefore, Harman fails to succeed on its estoppel claim.

█ Harman also argues that OSM's NOV violates due process because it justifiably relied on settled law, only to have OSM retroactively apply current regulations. Harman's argument is misplaced because this court applied 30 C.F.R. § 710.5

(definition of "road"), effective regulations during the period of Kimberly's operation. No retroactive application occurred. This court has not relied to any extent upon 30 C.F.R. § 710.5 (definition of "affected area"). OSM simply refused to accept Harman's efforts to convert the road to a public road by utilizing Va.Code § 33.1–246.1 because the Secretary found it invalid. The fact that the Secretary did not find the Va.Code section invalid until after Harman attempted to utilize it is insignificant. To hold otherwise would forbid retroactive application of an invalid regulation or statute.

█ Lastly, Harman claims that 30 C.F.R. § 700.11(c) [4] precludes OSM from issuing the NOV. As this court recently held in *Patrick*, 30 C.F.R. § 700.11(c) is sufficient in its scope to prevent OSM from penalizing Harman for its reliance prior to reversal, but it is not sufficient in its scope to prevent OSM from determining that Harman's affected area was more than two (2) acres and from issuing a NOV. *Patrick*, at 386. To read § 700.11(c) so broadly as to prevent OSM from issuing a NOV or CO would effectively cripple OSM of any enforcement power and render 30 U.S.C. § 171 meaningless. OSM could reverse a state's regulatory authority decision of exemption, but would be powerless to correct the existing violation. This expanded interpretation is not the Secretary's intended meaning.

█ Additionally, 30 C.F.R. § 700.11(c) is not applicable in this case because Harman did not act in good faith. ALJ McGuire found the "attempt to categorize these roads as being 'public' is, in reality, a sham and a stratagem which was obviously employed in order to avoid the reclamation strictures of the Act [SMCRA] and the implementing regulations." (Decision of ALJ Joseph E. McGuire, July 24, 1986 p. 7.) This court finds that Harman's eleventh hour attempt to designate the roads as public is in fact evidence of lack of good

---

**4.** 30 C.F.R. § 700.11(c) provides in pertinent part:
  If a written determination of exemption is reversed through subsequent administrative or judicial action, any person who, in good faith, has made a complete and accurate request for an exemption and relied upon the determination, shall not be cited for violations which occurred prior to the date of reversal.

faith and supports the ALJ's finding. As such, 30 C.F.R. § 700.11(c) is inapplicable. For all the foregoing reasons, this court denies Harman's request for temporary relief.

