UNITED STATES of America, Plaintiff,

v.

SHELTON COAL
CORPORATION, Defendant.

Civ. A. No. 83–0254–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 30, 1986.

Morgan E. Scott, Roanoke, Va., David W. McNabb, Asst. U.S. Attys., Knoxville, Tenn., Maria Pizuka, Dept. of Justice, Washington, D.C., for plaintiff.

Daniel R. Bieger, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This complaint is brought at the request of the Secretary of Interior (the Secretary) for recovery of delinquent reclamation fees and interest thereon due and owing under the provisions of the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. § 1201, *et seq.*) (the Act). Pursuant to 30 U.S.C. § 1232(a), all coal mining operators who are subject to the provisions of the Act are required to pay to the Secretary for deposit into a fund, a reclamation fee of thirty-five cents per ton of coal produced by surface mining and fifteen cents per ton of coal produced by underground mining. These reclamation fees are paid into a trust fund administered by the Secretary for the restoration of land and water resources previously suffering from the adverse effects of coal mining.

Defendant in this case relies upon 30 U.S.C. § 1278, which provides:

Provisions of this Act shall not apply to any of the following activities ... the extraction of coal for commercial purposes where the surface mine operation affects two acres or less.

I.

The facts in this case are outlined in the stipulation of fact filed with the court. These undisputed facts reveal that the defendant operated an underground coal mine under state permits during the third and fourth calendar quarters of 1980 and the first calendar quarter of 1981, producing sufficient coal to generate a potential reclamation fee liability of $8,116.33. Including interest and penalties through May 31, 1986, this fee has accumulated to $13,-649.39 plus additional interest and penalties of $121.74 per month beginning June, 1986. It is further undisputed that the mine area covered 1.55 acres and that the defendant utilized a pre-existing haul road in connection with its mining activities. Total acreage of the haul road and the mine area is well in access of two acres. The haul road was maintained by Blackwood Fuel Company and was permitted to Blackwood Fuel Company under its Permit Number 801. Thus, the issue is clearly drawn as to whether or not in 1981 at the time of this operation, the haul road should be included in the "affected area" of defendant's operations as defined by the Act. If it is not included, then the defendant was under the two-acre exemption and does not owe any reclamation fees.

II.

There can be no question that haul roads were not expressly included in the computation of the two acres by regulations until amendments were made to 30 C.F.R. § 700.11 in July 1982. Therefore, the question arises as to whether or not the regulation of July 1982 is to be construed retroactively. In making such a determination, it is necessary to determine what laws and regulations did exist prior to July 1982 and whether the amended regulation of July 1982 was a recitation of prior law or whether it overruled prior law. In *Sam v. United States*, 682 F.2d 925, 932 (Ct.Cl.1982), the following is stated:

Ordinarily, if a new regulation or interpretation merely recites settled prior law or policy, then retroactive application of

the regulation or interpretation is proper. If, however, the new regulation or interpretation overrules prior law or policy, the new regulation or interpretation will not, depending upon various factors, be given retroactive effect. This distinction is obviously grounded upon notions of fairness to the involved parties. *Citing, Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977), *cert. denied*, 436 U.S. 944 [98 S.Ct. 2845, 56 L.Ed.2d 785] (1978).

Accordingly, the first matter of consideration is the Act itself as it applies to haul roads in relation to the definition of "disturbed areas." The Act mentions haul roads specifically in 30 U.S.C. § 1291(28). Haul roads are included as part of the "disturbed area" under the following conditions:

> Such areas shall also include any adjacent lands the use of which is incidental to any such activities, all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage.

There is no evidence in this case that the haul road is a new road. Indeed, it is stipulated to the contrary. Furthermore, there is no evidence in this case that the road was improved or maintained by the defendant. There is evidence that the road was used to gain access to the mine site and for haulage to and from the mine site. The problem involved in this case is that the road was maintained and was also used by another mining company to which it was specifically permitted. While it is clear from the Act that haul roads are included in determining "disturbed area," there is no case authority and the statute is unclear as to whether two or more coal companies shall be charged for the same road. Both parties cite the court to administrative proceedings which occurred prior to July 1982 which would tend to support their respective interpretations and positions.

Defendant cites two cases decided by administrative law judges which were final and binding on the Secretary. Both of these cases support the defendant's position in this case, to-wit: that OSM cannot double count the haul road against two companies. In the case dated March 9, 1981 involving Golden Chip Coal Company, the administrative law judge said:

> Since two men cannot father the same child, neither can Golden Chip be responsible for that which is legally attached to A & D.... Since A & D has permitted the road, A & D is responsible for the road and to charge maintenance to Golden Chip is unjustified.

Another administrative law judge, on March 11, 1982, in a case involving W.D. Martin, stated:

> It is completely improper to establish dual liability; therefore, the 0.44 acres in the haul road cannot be counted in the disturbed area of Martin.

On the other hand, OSM cites two cases which were decided after July 1982, to-wit: *Rhonda Coal Co., Inc.*, 89 I.D. 460, September 21, 1982, and *Virginia Fuels, Inc.*, 89 I.D. 604, November 30, 1982, stating that where an access and haul road is used by more than one operator, the Board tentatively divided the acreage between the two companies.

If the present case turned solely on a review of these conflicting cases, the court is of the opinion that the standard set forth in *Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977) would direct this court to decide this case in favor of OSM. "It is retroactive change of settled law, not retroactive settling of unsettled law, which may produce unjust results." Davis, *Administrative Law Treatise*, Vol. 2, at 116 (2d ed. 1979).

However, there are other factors set forth by the Circuit Court in *Anderson, Clayton & Co.*, which must be considered.[1] As the court has noted, no regulation was

---

1. *Anderson, Clayton & Co.* involved federal income tax laws. However, this court considers reclamation fees to be sufficiently similar to income taxes for *Anderson, Clayton & Co.* to lend support in deciding the present case.

issued by the federal government regarding haulways being a part of affected area until July 1982. The Secretary had promulgated various rules to interpret the original definition of "affected area," as set forth in 30 C.F.R. § 701.5. A rule was proposed by the Secretary on January 23, 1981 (46 Fed. Reg. 7904) which was withdrawn on August 10, 1981. 46 Fed.Reg. 40,650. The Surface Mining Control and Reclamation Act of 1977 was and is a unique federal-state partnership legislation. It provided that there would be cooperation between federal agencies and state authorities to minimize duplication of enforcement, administration and inspection. The Federal Permanent Regulation Program became effective April 12, 1979. 30 C.F.R. § 701. Under these provisions, 30 C.F.R. § 701.-4(a) provided:

> A state regulatory authority shall assume primary responsibility for regulation and coal mining and reclamation operations during the Permanent Regulatory Program....

The State of Virginia, acting pursuant to this provision, promulgated regulations and codified certain laws preparatory to assuming primacy. This Virginia program received conditional approval on December 15, 1981 (46 Fed.Reg. 61,085). The defendant was granted an exemption under the two-acre rule allowed by the Virginia state regulatory authority. When Virginia submitted its regulatory program, it defined "affected area" as "land or water area actually affected by subsidence of which may be affected by planned subsidence, which is located above underground mine workings." At the time the Secretary granted primacy to Virginia, it was noted that there was a difference between the federal definition of "affected area" and the Virginia definition of "affected area." In granting primacy to Virginia, it was stated as follows:

> This deficiency is minor because on October 15, 1981, Virginia submitted material demonstrating that subsidence is an uncommon environmental problem in Virginia and therefore, the practical differ-

ence between the two definitions is minor.

46 Fed.Reg. 61,114.

Eventually, the difference between the Virginia regulation and the federal regulation which was promulgated in July 1982, resulted in a lawsuit which was settled under a consent order and dismissal in the case of *Commonwealth of Virginia et al. v. William P. Clark, Secretary,* Civil Action Number 83–0332–B (Jan. 9, 1985).

After careful consideration, the court is of the opinion that Shelton Coal justifiably relied on settled prior law and the putative retroactive regulation of July 1982 changed that law. There was no specific language in the Act and no federal regulation specifying that one coal company should be charged with disturbance of land permitted to another coal company where it made some use of the land. Furthermore, the primary regulator, the Commonwealth of Virginia, specifically granted a two-acre exemption to Shelton. During all this time, federal surface mine inspectors had the power to issue a cessation order to Shelton if they believed Shelton was not in compliance with federal law. Indeed, after July 1982, federal inspectors issued cessation orders to all two-acre exemptions in Virginia which commenced the litigation in *Commonwealth v. Clark,* Civil Action No. 83–0332–B. Even after the regulation in question was promulgated, OSM waited over a year before they began enforcement. All of these facts indicate that Shelton Coal justifiably relied on settled law and that the July 1982 regulation should not be applied retroactively against Shelton Coal. *Anderson, Clayton & Co.,* 562 F.2d at 981.

Additionally, there is another consideration which counsels this court not to apply the regulation retroactively in the case at bar. Retroactivity of this regulation in the present case would produce an inordinately harsh result. The amount of money involved in this case may not sound exorbitant. However, it is to be noted that the amount of penalties and interest is substantial.

Furthermore, in light of the attendant circumstances, a belated attempt to enforce the regulation is inherently unfair. The government changed the law in 1982 by regulation and filed this suit on August 20, 1983, more than a year after the regulation was changed. On January 13, 1984, the United States of America moved to stay this proceeding until the litigation was concluded between the Commonwealth of Virginia and the United States of America. The eventual settlement between the state and federal governments left this defendant twisting in the wind. It had relied upon an exemption granted by its primary regulator only to be later attacked by a co-regulator. Therefore, the court is of the opinion that to retroactively enforce the regulation in question would be a harsh and unjust result. See *Anderson, Clayton & Co.*, 562 F.2d at 981. Accordingly, a judgment order will be entered granting judgment to the defendant for the reasons stated herein.