**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**SHELTON COAL CORPORATION,
Defendant-Appellee,**

**Mining and Reclamation Council of America; National Coal Association; American Mining Congress; Virginia Coal Association, Amicus Curiae.**

No. 86–2606.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1987.

Decided Oct. 2, 1987.

Maria Arevalo Iizuka, Dept. of Justice, Land and Natural Resources Div. (Robert L. Klarquist, Dept. of Justice, Land and Natural Resources Div., F. Henry Habicht, II, Asst. Atty. Gen., John P. Alderman, U.S. Atty., Thomas R. King, Asst. U.S. Atty., Glenda Owens, David W. McNabb, U.S. Dept. of Interior, on brief), for plaintiff-appellant.

Daniel Robert Bieger (Copeland, Molinary & Bieger, on brief), for defendant-appellee.

John A. Macleod, Thomas C. Means, Peter K. Levine, Crowell & Moring, on brief, for amicus curiae Virginia Coal Ass'n.

Harold P. Quinn, Jr., William E. Hyman, Gregory E. Conrad, on brief, for amici curiae in support of appellee.

Before HALL and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The question is whether regulations adopted in 1982 by the Secretary of Interior may be applied retroactively to nullify a small mine exemption that had been granted by the Commonwealth of Virginia to Shelton Coal for a deep mining operation conducted in the last half of 1980 and the first quarter of 1981. The district court held that it could not be, and the United States has appealed. We affirm.

## I.

The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. §§ 1201–1328 (1986), requires that the operators of active coal mines contribute to a fund, administered by the Secretary of Interior, for use in the reclamation of surface areas disturbed by mining operations. Operators of deep coal mines are required to contribute to the fund 15¢ per ton extracted, while surface mining operators are required to pay 35¢ for each ton of coal extracted. The statute, however, contains an exemption for small commercial mining operations when the disturbed surface area is two acres or less. *Id.* at § 1278(2).

Covered operators are subject to extensive operational requirements.

Under the interim regulations then in effect in Virginia, the Commonwealth was the delegated front line regulator of the statute. *See* 30 C.F.R. § 710.4(b) (1986). Mine operators were required to obtain from the Commonwealth necessary mining permits.

In 1980, Shelton Coal applied to the Commonwealth for a permit to operate a deep mine which would directly affect a surface area of 1.55 acres. In computing the affected surface area, however, the Commonwealth did not include a haulage road used by Shelton Coal but which had been permitted to Blackwood Fuel Company and constructed, maintained and used by Blackwood. Had there been attribution of that road to Shelton, it would not have qualified for the two-acre exemption.

The statute, 30 U.S.C.A. § 1291(28)(B), requires inclusion in the surface area affected "all lands affected by the construction of any roads or improvement or use of existing roads" for access to the mining operation and for haulage. The statute, however, makes no reference to jointly used roads and provides little guidance for the attribution of such roads or their counting in connection with an exemption claim of a small mine operator.

Virginia had adopted a regulation under which a haulage road would be attributed to the mining operator to whom it was permitted and who was responsible for its operation and maintenance. That construction of the statute is reasonable since the surface disturbance associated with the road is caused primarily by the operator who constructs and maintains the road. Later permissive use by a second operator or other operators adds little to the already existing disturbance of the surface.

Under these circumstances, the Commonwealth granted Shelton Coal a permit to operate its deep mine and an exemption from the statute, finding that the disturbed surface area was 1.55 acres, well within the two-acre exemption.

Virginia submitted proposed permanent regulations to the Secretary of Interior for his approval. The Secretary of Interior conditionally approved them in December 1981. Included in the proposed regulations was Virginia's rule that a jointly used haulage road be counted but once. The Secretary voiced no objection to the rule, though he did object to other rules including one that a haulage road might not be counted at all if it had been deeded to a county for public use, without regard to the nature and extent of the public use. *See* 46 Fed. Reg. 61,099–61,101 (1981).

One of the conditions of the Secretary's approval of the regulations was that Virginia make the haulage road policy consistent with federal requirements. *See* 46 Fed. Reg. 61,115, but that general statement obviously refers to the expressed grounds for disapproval such as Virginia's policy of ignoring a haulage road that had been granted to a county. One may not conclude that a general requirement of consistency with federal standards is disapproval of Virginia's rule that jointly used roads be counted but once.

It was not until 1982 that the Secretary gave any formal consideration to the problem of attribution of jointly used roads. Under the notice and comment requirements of the Administrative Procedures Act, 5 U.S.C.A. § 553 (1977), he published a Notice of Proposed Rulemaking, and he said:

> Often, however, portions of the same road are used by more than one operation for access or haulage. In this case, it is not clear under the present section of [the regulations] to which operation the road should be attributed.

47 Fed.Reg. 48 (1982). The Secretary proposed "an entirely new two-acre rule" and listed five alternative approaches to the problem of counting such haulage roads: (1) attribute entire road to the operation that either owns it or makes greater use of it; (2) double count road by attributing it to each operation; (3) divide road equally; (4) attribute the road pro-rata by usage and (5) allow the individual states to adopt a method for attributing road segments. *Id.* at 49–50. The proposal then discussed each alternative and called for public comment.

On August 2, 1982, the Secretary adopted alternative 2, double counting of the jointly used haulage roads. The Secretary explained that alternatives 1, 3 and 4 were rejected because they would be "difficult to implement" and "administratively impractical." 47 Fed.Reg. 33,425–6 (1982). Alternative 5 was rejected because it would have led to "unequal administration and enforcement" of the two-acre rule. *Id.* at 33,426. Alternative 2 was adopted because "it is the most consistent with the language and purpose of the two-acre exemption and does not present the administrative problems ... with regard to the usage." *Id.* at 33,425.

## II.

■ The United States contends that the 1982 regulation was merely a clarification of a pre-existing federal requirement, a contention considered and rejected by the district court. *See United States v. Shelton Coal Corp.*, 647 F.Supp. 264 (W.D.Va. 1986). We think the district court was correct.

From all that appears, little consideration was given in the Department of the Interior to the problem of jointly used roads before 1981. In March of that year, an administrative law judge in the Department of the Interior ruled that jointly used access or haulage roads should be attributed to the permittee and not to the other joint users. *Golden Chip Coal Co. v. Office of Surface Mining Reclamation and Enforcement*, (Mar. 9, 1981). A similar administrative law judge ruling was announced on March 11, 1982. *W.D. Martin v. Office of Surface Mining Reclamation and Enforcement*, (Mar. 11, 1982). After adoption of the new regulation in August 1982, the Administrative Review Board in the Department of the Interior announced two decisions consistent with the new regulation. *See Virginia Fuels, Inc.*, 89 I.D. 604 (Nov. 30, 1982); *Rhonda Coal Co.*, 89 I.D. 460 (Sept. 1, 1982). But those administrative decisions followed adoption of the new regulation and did not precede it.

The only significant directly relevant thing that we do know is that in December 1981 the Secretary conditionally approved Virginia's proposed regulations. The condition required Virginia to adjust its rule respecting access and haulage roads in some respects, but the enumerated respects do not include Virginia's single counting rule. To that rule no federal objection was interposed. As to that, the Secretary's approval was unconditional.

Moreover, in 1982 when the Secretary proposed to regulate the joint use of such roads, he followed the notice and comment

requirements of the Administrative Procedure Act, 5 U.S.C.A. § 553 (1977). Typically, that procedure is reserved for legislative or substantive rules; interpretative or clarifying rules may be adopted without notice and comment. *See* id. at § 553(b)(3)(A); *see also Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir.1980).

Finally, in the Secretary's Notice of Proposed Rulemaking he stated that it was unclear to which operation roads should be attributed, when there was joint use by two or more operators. He then proposed to adopt "an entirely new two-acre rule" and listed five alternative directions such a regulation might take.

From the foregoing, it appears that there was no federal rule on the subject. The Secretary's approval of Virginia's single counting rule in December 1981 suggests that at that time the Secretary and Virginia were in step about the attribution of jointly used roads.

### III.

The United States contends that granting an exemption certificate was not within Virginia's delegated authority. The contention is based upon the fact that the Commonwealth of Virginia does not have responsibility for managing the fund, but the exemption relates directly to the operational provisions of the statute as well as to the requirement of contributions to the fund.

30 U.S.C.A. § 1278 grants an exemption from all of the provisions of the statute for (1) extractions of coal by one for his own non-commercial use from land owned or leased by him, (2) extractions of coal for commercial purposes where the surface area affected is two acres or less, and (3) extractions of coal as an incidental part of governmentally financed highway or other construction under regulations adopted by the applicable regulatory authority. 30 U.S.C.A. § 1278 (1986). The exemption is from all provisions of the chapter, so that an operator falling within one of the exempted classes is exempted not only from the requirement of contribution to the fund, but from the operational provisions of the statute as well.

During the interim period in which Shelton Coal's operations occurred, the Secretary had delegated to the Commonwealth of Virginia front line operational authority. It was the permitting agent, and, generally, the inspectors and enforcers in the field were its employees, not those of the Secretary.

In performing their permitting and operational functions, officials of the Commonwealth necessarily had to interpret and apply the exemption provisions. Surely, the Secretary did not expect the Commonwealth to apply and enforce the operational provisions upon the small landowner extracting coal from his own coal pit for use upon his own hearth. The exemption of the small commercial operator is of equal dignity, and the Commonwealth was required to determine when it was applicable and to refrain from enforcing the operational provisions on any operation qualifying for that exemption. Indeed, the Commonwealth would have been very derelict in its duty had it not proceeded with a purpose of recognizing the exemption in proper cases.

An operation exempt from the operational provisions of the statute is necessarily exempt from the requirement of contribution to the fund, since the stated exemption takes the operator completely outside the statute.

### IV.

We think the district court had a rational basis for its finding and conclusion that it would be unfair and unconscionable to apply the new regulation retroactively.

There was a basis for the finding of reasonable reliance upon Virginia's exemption, and Virginia's interpretation of the statute was a rational one. There was no indication that the interpretation contravened any federal rule.

The amount of the unpaid reclamation fees claimed by the United States only slightly exceeds $8,000. Because of the long delay by the United States in assert-

ing the claim and the lapse of time occasioned by subsequent litigation, the additional penalties and accrued interest greatly enlarge the claim. For a small operation of less than nine months duration, moreover, a potential obligation of $8,000 or more may mean the difference between a decision to proceed and one to avoid the risk of the venture.

Nothing can be said for the retroactive application of the new regulation except that it would add the amount collected to the reclamation fund. In the circumstances of this case, however, that interest is outweighed by fairness to the regulated operator. *See Bedford County Memorial Hospital v. Health & Human Services,* 769 F.2d 1017, 1024 (4th Cir.1985); *see also Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 980–84 (5th Cir.1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

The Secretary seems to have arrived at the same conclusion regarding use of the exemption after the 1982 amendment. The amendment provides that where an operator discloses all relevant facts and obtains an exemption, a subsequent administrative or judicial decision overturning the exemption shall apply prospectively. 47 Fed.Reg. 33,432 (1982). The operator "should not be cited for violations during the time it relied upon the regulatory authority determinations of exemption." *Id.* at 33,429. The operator would be subject to the program requirements "only as of the date the final determination is rendered." *Id.* We think this fairness based approach should apply in the pre–1982 period as well.

Finally, it may be worthy of note that neither the Notice of Proposed Rulemaking nor the regulation as finally adopted gave any hint that the new regulation would be applied retroactively. Indeed, there may be some question as to whether the new regulation, presumptively adopted as part of the permanent regulatory program, may be applied within the interim regulatory period without new notice and comment under the APA. We need not address that question, for the Department waited until August 1983, about a year after promulgation of the new regulation, before it asserted this claim based upon its attribution of a retroactive effect to the regulation. Failure to have even mentioned it sooner suggests that it was an afterthought.

AFFIRMED.